IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 01-CR-3047-LTS |
| | ) | |
| vs. | ) | (Capital Case) |
| | ) | |
| DUSTIN LEE HONKEN, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESISTANCE TO DEFENDANT'S MOTION TO
DECLARE HIS EXECUTION DATE NULL AND VOID
AND HIS MOTION TO RESCHEDULE HIS EXECUTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 2

BACKGROUND ...................................................................................................... 3

    I.    Legal Background ...................................................................................... 3

    II.   Relevant Factual and Procedural Background ....................................... 7

    III.  The Present Motions ............................................................................... 10

ARGUMENT ......................................................................................................... 11

    I.    The Bureau of Prisons Possessed Lawful Authority to Set the Date of
        Defendant's Execution .......................................................................... 12

    II.   The Court Lacks Authority to Change or Modify the Execution Date
        Properly Set by the Bureau of Prisons .................................................. 20

CONCLUSION....................................................................................................... 26

1

The United States submits this response to defendant Dustin Lee Honken's motion requesting an order declaring that the July 17, 2020 execution date scheduled by the Bureau of Prisons is "null and void," (Docket 810), and his motion asking the Court to reschedule his execution for "Spring 2021," (Docket 811). The motions should be denied for the reasons stated below.[1]

## INTRODUCTION

Defendant Dustin Lee Honken was convicted of killing five people and sentenced to death almost 15 years ago. He received review of his conviction on direct appeal and on collateral review under 28 U.S.C. § 2255, and his convictions and sentence were affirmed. The two motions now before the Court are merely attempts to avoid or delay his execution, which had been scheduled for January 15, 2020, and is now scheduled for July 17, 2020.

In his first motion, defendant seeks an order from this Court declaring that the execution date set by the Bureau of Prisons, July 17, 2020, is "null and void." (Docket 810-1 at 3, 12-13). In his second motion, defendant seeks an order from the

---

[1] Defendant Daniel Lee, who is scheduled for execution on July 13, 2020, filed nearly identical motions on July 1 and 2, 2020, in *United States v. Lee*, No. 97-CR-0342, Docket 1400, 1401 (E.D. Ark.). As discussed herein, the United States District Court for the Eastern District of Arkansas denied both motions on July 10, 2020. *See Lee*, E.D. Ark. No. 97-CR-0342, Docket 1425 (attached as Ex. 6). The court also explicitly ordered the execution of defendant Lee's death sentence on July 13, 2020, although the court stated that it did not believe such an order was necessary for the implementation of the defendant's sentence. *Lee*, E.D. Ark. No. 97-CR-0342, Docket 1426 (attached as Ex. 7).

Court postponing his execution until Spring 2021. (Docket 811-1 at 3, 23). Defendant's motions lack merit—in fact the relief he seeks, if granted, appears to be unprecedented—and should be denied.

## BACKGROUND

## I. <u>Legal Background</u>

Since the First Congress "made a number of" federal offenses "punishable by death" in the Crimes Act of 1790, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019), to the present, Congress has not, to the government's knowledge, prescribed rules for fixing the date of execution. That omission is consistent with the fact that "at common law the sentence of death was generally silent as to the precise day of execution." *Holden v. Minnesota*, 137 U.S. 483, 496 (1890). The Supreme Court has determined, however, that the Constitution permits either the executive or judiciary to set a date for execution. *Id.* at 495-96.

As a matter of historical practice, in the federal system, both the Executive Branch and the Judiciary have set execution dates in death penalty cases. Accordingly, in an 1855 opinion, the Attorney General explained that sometimes the President fixed the date of execution and sometimes the courts. 7 Op. Att'y Gen. 561, 562 (1855) (Docket 811-2 at 18); *see Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993) (describing nineteenth-century practices). In 1830, President Andrew Jackson decided to "leave" it to the "discretion of the court" to fix the date of execution, and it appears

3

that this became the "established practice" for at least a period. 7 Op. Att'y Gen. at 562-63 (Docket 811-2 at 18-19). But the varied practice in which either the Judiciary or the Executive Branch may set the date of execution in a federal death penalty case has persisted and continued to the recent past. *See infra* p. 6.

While Congress has not set rules for fixing the date of federal executions, it has at various times set rules for the method of execution. The Crimes Act of 1790 prescribed hanging as the method of execution. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108-09 (D.C. Cir. 2020) (per curiam). This provision governed until 1937, when Congress determined that the method of execution would be the method prescribed by the laws of the State within which sentence was imposed. *Id.* at 109. Congress repealed the 1937 provision in 1984, and the Attorney General promulgated regulations in 1993 to "fill this gap." *Id.*[2]

The 1993 regulations provide, in relevant part, that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," "[a]t a federal

---

[2] The 1993 regulations were also prompted by Congress's passage of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848 (1989), which created the death penalty for certain drug-related offenses and established procedures for imposing a sentence of death but did not create rules for implementing a death sentence, such as rules regarding the method of execution. *See Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, 56536 (Nov. 30, 1992) (proposed rule to be codified in 28 C.F.R. part 26). Prior to enactment of the Anti-Drug Abuse Act of 1988, the federal death penalty was dormant after *Furman v. Georgia*, 408 U.S. 238 (1972), and *Gregg v. Georgia*, 428 U.S. 153 (1976).

4

penal or correctional institution designated by the Director of the Federal Bureau of Prisons," "[b]y a United States Marshal designated by the Director of the United States Marshals Service," and "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 C.F.R. § 26.3(a). The regulations also direct federal prosecutors to file a "proposed Judgment and Order" with the district court stating that "[t]he sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service," "[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death," "[t]he sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons," and "[t]he prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence." 28 C.F.R. § 26.2(a).

Congress subsequently enacted the Federal Death Penalty Act of 1994, which remains in effect to this day. That statute provides, in a section entitled "[i]mplementation of a sentence of death," that "[a] person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," and "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the

5

manner prescribed by the law of the State in which the sentence is imposed."  18

U.S.C. § 3596(a).  The statute further provides that "[i]f the law of the State does

not provide for implementation of a sentence of death, the court shall designate

another State, the law of which does provide for the implementation of a sentence of

death, and the sentence shall be implemented in the latter State in the manner

prescribed by such law."  *Id.*

Three federal defendants have been executed after enactment of the Federal

Death Penalty Act of 1994:  Timothy McVeigh, Juan Raul Garza, and Louis Jones,

Jr.  The Bureau of Prisons set an execution date for McVeigh, and he was executed

on June 11, 2001.  *See* Memorandum from Kathleen Hawk Sawyer, Federal Bureau

of Prisons (May 11, 2001) (attached as Ex. 1).  The district court in the Southern

District of Texas set Garza's date of execution, but President Clinton granted a

reprieve and then set a new execution date, and Garza was executed on June 19,

2001.  *See* Executive Grant of Clemency (Dec. 11, 2000) (attached as Ex. 2);

Executive Grant of Clemency (Aug. 2, 2000) (attached as Ex. 3).[3]  The Bureau of

Prisons set an execution date for Jones, and he was executed on March 18, 2003.

---

[3] Although Garza was executed after enactment of the Federal Death Penalty
Act, he, like Honken, was sentenced to death under the Anti-Drug Abuse Act of
1988, 21 U.S.C. § 848 (1992).  *See United States v. Flores*, 63 F.3d 1342, 1369 (5th
Cir. 1995).  The Federal Death Penalty Act's "general implementation provision," 18
U.S.C. § 3596, "does not by its terms apply to death sentences imposed under" the
Anti-Drug Abuse Act of 1988.  *United States v. Tipton*, 90 F.3d 861, 902 (4th Cir.
1996). Congress repealed the Anti-Drug Abuse Act's death-penalty provisions in
2006.

6

*See* Memorandum from Kathleen Hawk Sawyer, Federal Bureau of Prisons (Nov. 14, 2002) (attached as Ex. 4).

## II.   <u>Relevant Factual and Procedural Background</u>

In July 1993, defendant was under indictment for conspiring to manufacture methamphetamine when an essential witness against him, Gregory Nicholson, as well as three other people living with Nicholson, Lori Duncan and her daughters, Amber Duncan (age 6), and Kandi Duncan (age 10), disappeared. *United States v. Honken,* 541 F.3d 1146, 1150 (8th Cir. 2008); *Honken v. United States*, 42 F. Supp. 3d 937, 964 (N.D. Iowa 2013). Another witness, Terry DeGues, went missing on November 5, 1993. *Honken*, 42 F. Supp. 3d at 965. The 1993 indictment against defendant was dismissed. *Id.*

In October 2000, officers located the bodies of Nicholson, the Duncan family, and DeGues using maps defendant's girlfriend had drawn for an inmate who, unbeknownst to her, was an informant. *Id.* at 970. Nicholson and the Duncans had been buried in a single hole. *Id.* Nicholson and Lori Duncan were found bound and gagged, and they had each been shot multiple times, including once in the head. *Id.* Officers found Amber and Kandi Duncan in the bottom of the hole; each of them had been shot once in the back of the head. *Id.* Officers found DeGeus's body buried face-down in a field a few miles away from the other victims. *Id.* DeGeus had been shot, and his skull was fragmented into numerous pieces. *Id.*

A jury convicted defendant of all seventeen counts of a superseding indictment: five counts of witness tampering in violation of 18 U.S.C. §§ 1512 and 1111, one count of soliciting the murder of a witness in violation 18 U.S.C. § 373(a)(1), one count of conspiracy to tamper with witnesses and to solicit the murder of witnesses in violation of 18 U.S.C. § 371, five capital counts of drug conspiracy murder in violation of 21 U.S.C. § 848, and five capital counts of Continuing Criminal Enterprise ("CCE") murder in violation of 21 U.S.C. § 848. *Honken*, 541 F.3d at 1149. The trial evidence was "overwhelming" and amounted to "irrefutable proof" of defendant's guilt. *Honken*, 42 F. Supp. 3d at 997-98.

After the guilt phase of the trial, the jury returned a "penalty phase" verdict on October 27, 2004, recommending that defendant be sentenced to death for the murders of Amber and Kandi Duncan. (Docket 547). This Court sentenced defendant to death and entered judgment on October 11, 2005. (Docket 702). The judgment imposed the death sentence and remanded defendant to the custody of the United States Marshal. (Docket 702-2 at 3).

The United States Court of Appeals for the Eighth Circuit affirmed defendant's conviction and sentence on direct appeal. *Honken*, 541 F.3d at 1175, *cert. denied*, 558 U.S. 1091 (2009). This Court granted in part and denied in part defendant's subsequent motion to vacate or set aside his sentence under 28 U.S.C. § 2255, finding that trial counsel were ineffective in waiving the argument that convictions for both CCE murder and conspiracy murder were multiplicious.

*Honken*, 42 F. Supp. 3d at 1038.  The Court denied defendant relief, however, because "there is no reasonable probability that, absent the multiplicitous capital counts, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Id.*  This Court entered an amended judgment imposing the death sentence and remanding defendant to the custody of the United States Marshal.  (Docket 804 at 3).  The Eighth Circuit Court of Appeals denied a certificate of appealability on May 2, 2014, and the United States Supreme Court denied certiorari on October 5, 2015.  *Honken v. United States*, No. 10-CV-3074, Docket 110, 114 (N.D. Iowa).

On July 25, 2019, the Bureau of Prisons, at the direction of the Attorney General, scheduled defendant's execution to take place on January 15, 2020.  *Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse*, July 25, 2019, *available at* https://www.justice.gov/opa/pr/ federal-government-resume-capital-punishment-after-nearly-two-decade-lapse (last visited July 8, 2020).  A district court in the District of Columbia presiding over a lawsuit challenging the federal execution protocol granted a preliminary injunction prohibiting defendant's execution from going forward.  *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145, Docket 51 (D.D.C. Nov. 20, 2019).  Defendant's execution therefore did not go forward on January 15, 2020.

On April 7, 2020, the United States Court of Appeals for the District of Columbia vacated the preliminary injunction in the execution-protocol litigation.  *In*

*re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020).  Accordingly, on June 15, 2020, the Bureau of Prisons, at the direction of the Attorney General, scheduled defendant's execution to take place on July 17, 2020. (*See* Docket 807).  The Supreme Court subsequently granted expedited consideration of defendant's petition for certiorari in the execution-protocol litigation and denied that petition.  *Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29, 2020).

## III.   **The Present Motions**

On July 8, 2020, more than three weeks after the Bureau of Prisons set a date for defendant's execution for a second time, defendant filed a motion arguing, for the first time, that the Bureau of Prisons lacked authority to set a date for his execution.  (Docket 810, 810-1 at 12).  According to defendant, "[t]he authority regarding when and how to implement [his] death sentence rests solely with this Court, and authorization to act can be granted to BOP only through a formal order consistent with the regulations."  (Docket 810-1 at 6, *see also id.* at 7, arguing that "the district court has the authority to schedule execution dates for defendants it has sentenced to death," and "[t]his authority remains solely with the Court unless and until it is shared by entry of a judicial order").  Defendant argues that because the Bureau of Prisons did not request and obtain an order from this Court permitting it to set a date for defendant's execution, the Bureau of Prisons was without authority to schedule defendant's execution, and therefore this Court

10

should declare the July 17, 2020, execution date "null and void."  (Docket 810-1 at 12-13).

Also on July 8, 2020, defendant filed another motion arguing that even if this Court does not possess exclusive authority to set his execution date—in other words, even if the Bureau of Prisons also possessed authority to set that date—this Court nonetheless retains the authority and/or discretion to change an execution date set by the Bureau of Prisons.  (Docket 811, 811-1 at 4-9, 23, & n.8).  Defendant contends that this Court should exercise that alleged authority and discretion to postpone his execution until Spring 2021 because of the COVID-19 pandemic.  (Docket 811-1 at 6 n.8, 9-23).

## ARGUMENT

The Executive Branch possesses lawful authority to schedule execution dates for federal defendants sentenced to death, and therefore the Bureau of Prisons properly set defendant's execution to take place on July 17, 2020.  The Executive Branch has long possessed the authority to schedule execution dates in federal death penalty cases, and the Federal Death Penalty Act of 1994 confirms the Executive Branch's central role in implementing federal death sentences.  Even if this Court also possessed the authority to set a date for defendant's execution before the Bureau of Prisons set a date, now that the Bureau of Prisons has properly exercised its authority to set a date, this Court lacks discretion to change or modify that date.  If courts retained such discretion in these circumstances, then capital

11

case defendants would never have to meet the stringent standards for obtaining a stay in order to delay an execution. Moreover, even assuming the Court possessed discretion to change or modify an execution date set by the Executive Branch, it would be a manifest abuse of discretion to do so in the circumstances of this case.

## I.   **The Bureau of Prisons Possessed Lawful Authority to Set the Date of Defendant's Execution**

As discussed above, the Executive Branch has long possessed the authority to set an execution date in federal death penalty cases. That authority goes back to the founding era and has continued to the present, and it is now codified in the 1993 regulations, which state that a federal death sentence shall be executed "[o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," and "[i]f the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." 28 C.F.R. § 26.3(a)(1). Accordingly, the Bureau of Prisons acted within its lawful authority when, at the direction of the Attorney General, it rescheduled defendant's execution to take place on July 17, 2020.

Nothing in the Federal Death Penalty Act of 1994, or any other statute, alters or revokes the Executive Branch's longstanding authority to set an execution date in federal death penalty cases. To the contrary, the Federal Death Penalty Act confirms the Executive Branch's central role in implementing federal death sentences. The statute provides that "[a] person who has been sentenced to death

12

pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence." 18 U.S.C. § 3596(a). And "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." *Id.*

The Executive Branch's authority to set an execution date, and the Attorney General's codification of that authority in the 1993 regulations, is also consistent with the Executive Branch's constitutional and statutory duties in general. *Cf. United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996) (concluding that "absent directly preempting congressional action, the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences imposed under [the Anti-Drug Abuse Act of 1988]," which preceded the Federal Death Penalty Act). The Executive Branch is constitutionally obligated to "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3. And Congress has authorized the Attorney General to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business," 5 U.S.C. § 301; has vested all functions of the Department of Justice in the Attorney General, 28 U.S.C. § 509; and has authorized officers, employees, and agencies of the Department to perform those functions, 28

U.S.C. § 510.  Among the agencies within the Department of Justice are the United States Marshals, whose obligation is to "obey, execute, and enforce all orders of the United States District Courts," 28 U.S.C. § 566(a), and to "execute all lawful writs, process, and orders issued under the authority of the United States," 28 U.S.C. § 566(c).  Also among the agencies within the Department of Justice is the Bureau of Prisons, which is charged with determining the place and manner of custody of prisoners.  *See* 18 U.S.C. § 3621.  These provisions, together with the implementation provisions in the Federal Death Penalty Act, reinforce the Executive Branch's longstanding authority to set federal execution dates.

Defendant nonetheless contends in his first motion, (Docket 810-1 at 6-7), that this Court alone possesses the exclusive authority to set an execution date and that the Executive Branch may set a date only if authorized by the Court.  That argument, however, is unsupported by statute, precedent, or long-standing prior practice, as discussed above.  After the Court entered judgment sentencing defendant to death, the Executive Branch possessed the lawful authority to set a date to carry out that judgment.  The Bureau of Prisons therefore acted well within its authority when it scheduled defendant's execution to take place on July 17, 2020.

Nevertheless, defendant claims, (Docket 810-1 at 10), that the 1993 regulations recognize the Court's exclusive authority to set an execution date because those regulations state that the Bureau of Prisons may carry out the execution in accordance with the implementation procedures set out in the

14

regulations "[e]xcept to the extent a court orders otherwise." 28 C.F.R. § 26.3(a). Defendant contends that the "except" clause is a recognition that the court has exclusive "implementation authority" for the death penalty. (Docket 810-1 at 10).

On the contrary, the "except" clause makes clear that the Bureau of Prisons may set an execution date even in the absence of any court order. Section 26.3(a) provides that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and time designated by the Director of [the Bureau of Prisons]." 28 C.F.R. § 26.3(a)(1). Where, as here, a court does not enter any order at all, it has not entered any "order[] otherwise." *Id.* Thus, even in the absence of any court order, the Bureau of Prisons has the authority to "designate[]" the "date and time" of the execution under § 26.3(a).

Far from establishing that a court has the exclusive authority to set an execution date, the "except" clause is merely a recognition that both the Judiciary and the Executive Branch possess authority during the implementation of a capital sentence. Thus, the proviso is consistent with the Judiciary's long-standing concurrent—not exclusive—ability to set an execution date initially before the Executive Branch sets a date. And the proviso further recognizes that a district court may enter a stay of execution, which would preclude the Bureau of Prisons from setting an execution date or carrying out a capital sentence. In short, the 1993 regulations do not adopt defendant's theory that the Executive Branch can set an execution date only if authorized by the court. To the contrary, the regulations

15

establish that "[t]he date, time, and place of execution are to be determined by the Director of the Federal Bureau of Prisons, the institution normally charged with determining the place and manner of custody of prisoners." *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26).

Defendant also contends that 28 C.F.R. § 26.2 confirms his view that the Bureau of Prisons lacks authority to set an execution date, unless the court enters an order granting the Bureau of Prisons that authority. (Docket 810-1 at 3-4, 8-10). Nothing in § 26.2, however, makes the Bureau of Prisons' authority to set an execution date contingent on the court's entry of such an order. Section 26.2 provides that the government "shall promptly file . . . a proposed Judgment and Order," but it does not say that the court must adopt the "proposed Judgment" in order for the Bureau of Prisons to set an execution date. On the contrary, as explained above, the very next regulation, 28 C.F.R. § 26.3, makes clear that the Bureau of Prisons may set an execution date even in the absence of such a court order; § 26.3 provides that "[e]xcept to the extent a court orders otherwise"—*i.e.*, in the absence of any court order at all—"a sentence of death shall be executed . . . [o]n a date and time designated by the Director of the Federal Bureau of Prisons." 28 C.F.R. § 26.3(a)(1). Defendant's contention that a court order is necessary for the Bureau of Prisons to set an execution date thus finds no support in the text of the regulations themselves.

16

Nor does it find any support in the history or purpose of the regulations. When proposing those regulations, the Department of Justice explained that "[i]n cases where the court adopts in full the proposed Judgment and Order, the execution will be carried out according to the procedures dictated by both judicial and executive mandates, operating in tandem." *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26). But the Department made clear that "[t]he rule contemplates . . . that establishment by the Executive Branch of procedures for execution is entirely adequate for execution of a duly-ordered sentence of death." *Id.* In other words, while the government's submission of a proposed judgment and order promotes coordination between the Executive Branch and the Judiciary, the court's entry of such a judgment and order is not necessary to give the Executive Branch the authority to carry out an execution. The Executive Branch therefore possessed the authority to set a date for defendant's execution, with or without a court order.

Defendant relies on the Department's responses to commenters who opposed the proposed regulations. (Docket 810-1 at 8-10). In those responses, however, the Department explained that historically both the Executive Branch and the Judiciary have set the dates for federal executions. *See Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993). And the Department did not abandon its view that "establishment by the Executive

17

Branch of procedures for execution is entirely adequate" and that a judgment and order memorializing those procedures is therefore not necessary. *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26).

To the extent that defendant suggests that 28 C.F.R. § 26.2 makes the Bureau of Prisons' authority to set an execution date contingent on the government's *submission* of a "proposed Judgment and Order" under that regulation, that suggestion is likewise misplaced. Although § 26.2 provides that the government "shall promptly file with the sentencing court a proposed Judgment and Order," it does not specify any consequence for failure to promptly file such a "proposed Judgment and Order." The text of the regulation therefore does not support depriving the government of authority to set an execution date as a sanction for not promptly making such a filing. *See Dolan v. United States*, 560 U.S. 605, 611 (2010) (explaining that where "a statute 'does not specify a consequence for noncompliance with' its 'timing provisions,' 'federal courts will not in the ordinary course impose their own coercive sanction'"). And construing § 26.2 to impose such a sanction would be particularly misguided given the purpose of the regulation, which was to promote comity and coordination between the Executive Branch and the Judiciary, not to confer on a defendant any enforceable rights. *See Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899, 4900 (Jan. 19, 1993).

18

At the very least, § 26.2 provides no valid basis for imposing any sanction where, as here, any noncompliance with its provisions did not prejudice defendant in any way. *See* 5 U.S.C. § 706 (instructing that in review of agency action under the Administrative Procedure Act (APA), "due account shall be taken of the rule of prejudicial error"); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, Nos. 19-431, 19-454, 2020 WL 3808424, at *12 (U.S. July 8, 2020) (finding "no 'prejudicial error'" in an agency's failure to publish a document with a particular title because respondents had fair notice in any event); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (the rule of prejudicial error is an "administrative law . . . harmless error rule") (quotation marks omitted). Defendant has received ample notice of every item of information that a "proposed Judgment and Order" under § 26.2 would contain. *See* 28 C.F.R. § 26.2(a)(1)-(4). Nowhere in defendant's motion does he argue that he was prejudiced by the fact that no such "proposed Judgment and Order" was promptly filed in his case. (Docket 810, 810-1). To construe § 26.2 as depriving the government of authority to set execution dates in cases such as this would therefore grant massive windfalls to defendants who cannot identify any harm from any alleged noncompliance with § 26.2's provisions.

The district court in *United States v. Lee*, No. 97-CR-0342, Docket 1425 (E.D. Ark. July 10, 2020), reached a similar conclusion in denying a motion nearly identical to defendant's. In examining 28 C.F.R. § 26.2, the court rejected defendant's argument that the proposed judgment and order were necessary for a

19

court to give its authority to implement a death sentence to the Bureau of Prisons, as part of the Department of Justice. *Lee*, No. 97-CR-0342, Docket 1425 at 8 ("Mr. Lee's position appears to be that the only way the Court may properly delegate its authority to implement a death sentence is by adopting the content of 28 C.F.R. § 26.2 in an order. But that is a misunderstanding of the role and import of the regulation."). The court concluded that its judgment committing the defendant to the Bureau of Prisons gave the Bureau of Prisons the authority to implement the defendant's execution. *Id.* at 7-8.

In short, the Executive Branch possesses the authority to set execution dates in federal death penalty cases, and that authority is not contingent on either the government's filing of a "proposed Judgment and Order" or a court's adoption of such a "proposed Judgment and Order." Therefore, the Bureau of Prisons lawfully set defendant's execution for July 17, 2020. A ruling that the date set by the Bureau of Prisons is null and void would be not only erroneous but also, to the government's knowledge, unprecedented.

## II.    <u>The Court Lacks Authority to Change or Modify the Execution Date Properly Set by the Bureau of Prisons</u>

In his second motion, defendant argues that even if the Executive Branch possesses authority to set his execution date, this Court nonetheless retains the authority and/or discretion to change that date. (Docket 811, 811-1 at 4-9, 23, & n.8). And he requests that this Court exercise that alleged discretion and postpone

20

his execution until more than eight months from now because of the COVID-19 pandemic. (Docket 811-1 at 6 n.8, 9-23).

This Court lacks discretion to change the date of defendant's execution as defendant requests. The Bureau of Prisons, as discussed above, has lawfully scheduled defendant's execution to take place on July 17, 2020. Now that the Bureau of Prisons has lawfully scheduled defendant's execution, the Court may postpone or halt the execution only through an equitable remedy such as a stay. In order to obtain a stay, however, defendant would have to satisfy a host of requirements. *See United States v. Lee*, 960 F.3d 1023, 1025 (8th Cir. 2020). Defendant does not attempt to meet those requirements and instead expressly disavows that he is seeking a stay. (*See* Docket 811 at 3). The Court therefore may not, on the asserted grounds, postpone defendant's execution to a later date.

In support of his argument that the Court possesses the authority to postpone his execution, defendant relies, (Docket 811-1 at 4-9), on the historical authority of federal courts to set dates for federal executions. As the government has described, it is true that over the course of the history of the federal death penalty, federal courts have sometimes provided the dates for federal executions. But it is equally, if not more, clear that the Executive Branch has the power to set execution dates, *see Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993), and in fact the Bureau of Prisons set the execution dates for the only two executions carried out under the Federal Death

Penalty Act of 1994, *see supra* p. 6. Defendant does not identify any historical practice permitting a federal court to reschedule an execution date lawfully set by the Executive Branch as an exercise of its authority or discretion, and the government is not aware of any such historical precedent.

Defendant also contends, (Docket 811-1 at 6-7), that the 1993 regulations demonstrate that any order by this Court "controls (and supersedes) any action by BOP" because those regulations, *see* 28 C.F.R. § 26.2(a), direct federal prosecutors to request a judgment and order setting forth the execution procedures established elsewhere in the regulations, *see* 28 C.F.R. § 26.3(a). But as discussed above, the Executive Branch need not propose or obtain a judgment and order to implement the procedures that the regulations authorize; the "establishment by the Executive Branch of procedures for execution is entirely adequate" by itself. *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26). The 1993 regulations do not recognize, let alone create, judicial authority to countermand a lawful execution date set by the Executive Branch.

Defendant's arguments also fall short insofar as he relies, (Docket 811-1 at 6-7), on the proviso in the 1993 regulations stating that the Bureau of Prisons can set the date and time of an execution "[e]xcept to the extent a court orders otherwise." 28 C.F.R. § 26.3(a). That proviso contemplates that a court may, for example, issue a stay of execution. *See supra* pp. 14-15. But defendant provides no support for the

sweeping assertion that the proviso gives a district court the authority and/or discretion to change an execution date previously set by the Executive Branch.

Indeed, if defendant's view were correct, then defendants in his position would never have to meet the stringent standards for obtaining a stay in order to delay an execution. Under his view, a defendant in his position could always ask for such a delay simply as an exercise of the court's discretion, rather than seek a stay. Federal executions, however, have never been regarded as such an exception to ordinary stay standards.

Even assuming this Court possessed discretion to change or modify an execution date properly set by the Executive Branch, changing the date as requested by defendant would represent a manifest abuse of discretion in the circumstances of this case. Defendant does not identify circumstances that justify a halt to federal capital proceedings for more than eight months. And the government has an overwhelming interest in the enforcement of a criminal sentence imposed by a unanimous federal jury after a fair trial and upheld through appellate and post-conviction proceedings in federal courts.

Defendant's counsel proffers that they have been "unable" to travel to meet with defendant. (Docket 811-1 at 22). However, the COVID-19 pandemic has not halted all travel, and counsel provides no further detail or explanation as to their failure to travel to Indiana. Defendant is permitted to have legal visits. Watson Decl. ¶ 9 (attached as Ex. 5). Defendant also may communicate with his counsel by

23

phone. Watson Decl. ¶¶ 6, 8. Defendant contends that phone calls are not an adequate substitute for in-person meetings, suggesting that officials from the Bureau of Prisons may listen in on phone calls with counsel. (Docket 811-1 at 21, claiming that phone calls raise "confidentiality concerns"). That suggestion, however, is baseless. In accordance with applicable regulations, the Bureau of Prisons does not monitor legal calls. Watson Decl. ¶¶ 6-8.

Defendant contends that his lawyers cannot adequately represent him in end-stage litigation and clemency proceedings occurring up and until his schedule execution, (Docket 811-1 at 19-20), but his assertions are speculative and vague. Defendant has not filed a petition for clemency. Notably, defendant fails to identify any additional investigation he wishes to conduct in support of any possible clemency or other "end-stage litigation," (Docket 811-1 at 20), let alone investigation that he has been unable to accomplish because of the COVID-19 pandemic. Defendant's claim that his legal efforts have been hampered is conclusory and should be rejected.

Defendant also claims, (Docket 811-1 at 20-22), that the COVID-19 pandemic will prevent his lawyers from providing in-person emotional support in the weeks prior to his execution and may prevent them from being present at his execution. Although the risks cannot be eliminated, the Bureau of Prisons is taking steps to reduce the risk to those who wish to be present at the execution. Watson Decl. ¶ 10. Notably, however, there is "no law that would support a right to counsel throughout

24

an execution." *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1117 (10th Cir. 2016). Although an accused has a Sixth Amendment right to counsel in all "critical stages" of the criminal proceeding, *United States v. Wade*, 388 U.S. 218, 227-28 (1967), an execution is not such a stage because it is not a confrontation between the prosecution and the defense, *see id.* Thus, any repercussions from the COVID-19 pandemic on the ability of defendant's counsel to be present at the execution would not impinge on defendant's constitutional rights, and indeed, defendant makes no such contention.

Finally, it is worth noting that federal courts throughout the country are not entirely halting criminal proceedings. For example, in the United States District Court for the Southern District of Indiana, the federal district that contains FCC Terre Haute, in-person criminal plea and sentencing hearings resumed as of July 6, 2020, and single-defendant criminal jury trials will resume beginning July 20, 2020. *General Order: Continued Court Operations Under the Exigent Circumstances Created by COVID-19 and the Related Coronavirus* (June 26, 2020), *available at* https://www.insd.uscourts.gov/sites/insd/files/General%20Order%20June%2026%20-%20Court%20Operations.pdf (last visited July 8, 2020).

In short, this Court does not possess the authority, absent a stay supported by the requisite findings, to postpone or reschedule the execution that the Bureau of Prisons lawfully set for July 17, 2020. And even if the Court were to possess discretion to reschedule the execution date set by the Bureau of Prisons, doing so in

25

the present circumstances would represent a manifest abuse of discretion.

Defendant's motion should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny defendant's motion, (Docket 810), to declare the July 17, 2020 execution date set by the Bureau of Prisons "null and void," and it should also deny defendant's motion, (Docket 811), to postpone his execution.

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By: */s/ Kyndra Lundquist*
    */s/ Justin Lightfoot*

KYNDRA LUNDQUIST
JUSTIN LIGHTFOOT
Assistant United States Attorneys
111 7th Avenue SE, Box 1
Cedar Rapids, IA  52401-2101
319-363-6333
319-363-1990 – Fax
Kyndra.Lundquist@usdoj.gov
Justin.Lightfoot@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on July 10, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.
UNITED STATES ATTORNEY
BY: /s/ HAD_____